UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| JOHN RYAN, | ) ) |
| Defendant. | ) |

Cause No.: 4:06-CV-100 CDP

## FINAL CONSENT INJUNCTION AND JUDGMENT

### I. Parties & Definitions

A.  Plaintiff Monsanto Company is a company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Monsanto is authorized to do and is doing business in Missouri and in this judicial district.

B.  Plaintiff Monsanto Technology, LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri. Monsanto Technology, LLC is authorized to do and is doing business in Missouri and in this judicial district. Monsanto Company and Monsanto Technology, LLC are hereinafter referred to collectively as "Monsanto."

C.  Defendant John Ryan (hereinafter "Defendant") is a resident and domiciliary of Montcalm County, Michigan. Defendant is engaged in a farming business that involves the planting of crops, including soybeans.

D.  "Person" means any natural individual or any entity, and, without limiting the generality of the foregoing, includes natural persons, associations, joint ventures, limited partnerships, partnerships, corporations, companies, trusts, and public agencies.

### II. Stipulated Findings

A.  Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331, in that one or more of Monsanto's claims arise under the laws of the United States, as well as 28 U.S.C. § 1338, granting district courts original jurisdiction over any civil action regarding patents. Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Monsanto's non-federal question claims, such that they form part of the same case or controversy.

**B.**   Venue is proper in this judicial district insomuch as the parties have agreed and consented to personal jurisdiction and venue in this judicial district and/or designated this Honorable Court as the forum and venue for all disputes arising under the licensing agreement.

**C.**   Monsanto is in the business of developing, manufacturing, licensing and selling agricultural biotechnology, agricultural chemicals and other agricultural products. After the investment of substantial time, expense and expertise, Monsanto developed new plant biotechnologies that involve the transfer into crop seed of genes that cause seed to be resistant to glyphosate-based herbicides such as Roundup® branded herbicides (the "Roundup Ready® trait").

**D.**   Monsanto's Roundup Ready® trait has been utilized in several agricultural crops, including soybeans, to render them resistant to applications of glyphosate, a herbicide. These genetically modified crop seeds are marketed by Monsanto and other seed companies as "Roundup Ready®" crop seed. Roundup® and Roundup Ready® are registered trademarks of Monsanto Technology, LLC.

**E.**   Monsanto's Roundup Ready® biotechnology is protected under patents issued by the United States Patent Office, specifically including U.S. Patent Number 5,352,605 (the "'605 patent"). Prior to the events giving rise to this litigation, the '605 Patent was issued to and/or Monsanto was the exclusive licensee from the owner and was authorized to enforce the rights relating thereto, including seeking injunctive and monetary relief for the infringement thereof.

**F.**   Monsanto placed the required statutory notice that its Roundup Ready® biotechnology was patented on the labeling of all bags of seed containing Roundup Ready® seed. In particular, each bag of Roundup Ready® soybean seed is marked with notice of the '605 patent.

**G.**   Under the terms of Monsanto's system through which its patented Roundup Ready® biotechnology is licensed, a purchaser is only authorized to use the seed for planting a commercial crop in a single growing season, and is prohibited from saving any of the crop produced from the purchased seed for planting or selling saved seed from the crop produced from the purchased seed, or otherwise supplying or transferring any seed produced from the purchased seed to anyone for planting.

**H.**   During the 2005 growing season, Defendant transferred/sold 620 bushels (744 fifty-pound units) of "saved," bin-run Roundup Ready® soybeans, that is, soybean seed which was produced from the Roundup Ready® soybean seed which had been planted in the 2004 crop year (or earlier) to Curt McCracken and/or McCracken Farms without authorization and Curt McCracken and/or McCracken Farms planted the Roundup Ready® soybeans obtained from Defendant.

## III. Permanent Injunction

A.  It is hereby ordered, adjudged and decreed that Defendant, individually and/or by, through or with any entity, or any agent, servant, employee, and each person in active concert or participation with Defendant who receives actual notice of this Judgment by personal service or otherwise, are permanently enjoined from:

  1.  Making, using, or planting any soybean seed containing Monsanto's patented Roundup Ready® biotechnologies unless Defendant executes and complies with the terms and conditions of the Monsanto Technology/ Stewardship Agreement attached hereto as Exhibit A, and any subsequent or modified terms of any limited license which Monsanto offers to users/purchasers of seed containing Monsanto's patented biotechnology; and

  2.  Offering to sell, selling, or transferring any soybean seed containing Monsanto's patented Roundup Ready® biotechnology to any person for planting, replanting, seed production, crop breeding, research, reverse engineering, generation of herbicide registration data, analysis of genetic composition, or any purpose other than sale as a commodity.

  3.  Infringing Monsanto's seed trait patents including, but not limited to, U.S. Patent No. 5,352,605.

B.  It is hereby also further ordered, adjudged and decreed that Defendant shall deliver a copy of Section III of this Final Consent Injunction and Judgment, and advise of such terms, to:

  1.  any person whom Defendant employs, retains, or otherwise utilizes to apply for, purchase, acquire, sell, or transfer soybean seed; and

  2.  any person who employs, retains, or otherwise utilizes Defendant to apply for, purchase, acquire, sell, or transfer soybean seed.

## IV. Mandates Through December 31, 2010

A.  It is hereby ordered, adjudged and decreed that Defendant, shall, at the time of his execution of this Final Consent Injunction Judgment, execute the attached Authorizations (attached hereto as Exhibits B-1 and B-2) to allow Monsanto, its counsel, or their respective representatives or agents, to inspect and copy all Farm Service Agency (formerly known as the Agricultural Stabilization and Conservation Service) farm records, acreage reports, disaster assistance applications, crop insurance records, crop production input records, records of the Risk Management Agency, records of the Commodity Credit Corporation and records of sales of soybean seed as a commodity for all years listed therein, inclusive through 2010.

**B.**    It is hereby ordered, adjudged and decreed that Defendant shall, upon written request from Monsanto or its representatives,

    **1.**    make all of his soybean seed purchase receipts and records, agricultural chemical purchase receipts and records and other agricultural input receipts and records relating to his soybean farming operations, if any, for the crop years 2006 through 2010, inclusive, available to Monsanto for inspection and copying within seventy-two (72) hours of the receipt of written notice;

    **2.**    show Monsanto or its representatives the location of all soybeans planted, harvested, and/or stored by or on behalf of Defendant, during the time period of January 1, 2006 through December 31, 2010, if any;

    **3.**    allow and accompany Monsanto or its representatives into:

        **a.**    all land planted, farmed and/or controlled by or on behalf of Defendant, including any acreage in which Defendant has any interest in whole or in part, and/or

        **b.**    all storage facilities (bins, barns, wagons, bags, warehouses, trailers, etc.) where stored soybean seed is within the care, custody or control of Defendant in whole or in part,

    so that Monsanto or its representative can inspect and determine the number of acres of soybeans planted in the 2006 through 2010 planting seasons, the amount of soybeans stored, and to obtain samples from fields and storage facilities for testing from the 2006 through the 2010 growing seasons.

## V. Monetary Provisions

**A.**    By consent of the parties, judgment is entered against Defendant John Ryan in the total amount of Thirty Thousand Dollars ($30,000), each party to bear its own costs and attorneys fees.

**B.**    Defendant does not claim, but nevertheless relinquishes any and all rights, benefits, and claims, if any, arising out of any Technology Value Package[SM], TVP[SM], or Roundup Rewards[SM1] pertaining to purchases, crops, or conduct occurring prior to the execution of this Final Consent Injunction Judgment to the extent any such rights, benefits or claims exist.

---

[1] Technology Value Package[SM], TVP[SM], and Roundup Rewards[SM] are service marks of Monsanto Technology LLC.

2404025.09

## VI. Other Provisions

A.   Having read and understood the terms and conditions of this Final Consent Injunction Judgment, the parties agree that this Final Consent Injunction Judgment constitutes a fair and adequate resolution of Monsanto's claims against Defendant arising from the sole infringing act now known to Monsanto which is detailed in Paragraph H of the Stipulated Findings (Section II). .

The parties have by their signature below, agreed that this Final Consent Injunction Judgment resolves this case. The parties, by their signature below, have further agreed that should it be determined that Defendant has committed additional acts of infringement in the past not now known by Monsanto (as separately detailed in the release language in the separate Monsanto Seed Settlement Agreement between the parties) and/or commits additional acts of infringement in the future, Monsanto reserves the right to pursue legal action relating to such infringement, subject to any defenses available to Defendant, except those potentially arising from or based on this litigation, the entry of this Final Consent Injunction Judgment, and Defendant's compliance with the terms of this Final Consent Injunction and Judgment (including, but not limited to res judicata, estoppel or wavier).

B.   Jurisdiction is retained for the purpose of enabling any party to this Final Consent Injunction and Judgment to apply to the Court at any time for the enforcement of the provisions herein and/or to remedy a violation of the Final Consent Injunction Judgment. This Final Consent Injunction and Judgment shall be governed by the laws of the State of Missouri and the United States.

C.   The failure, or alleged failure, to seek remedies as the result of violation of the Final Consent Injunction and Judgment shall not constitute a waiver of any other violation.

D.   If any provision or provisions of this Final Consent Injunction and Judgment is or are declared invalid by a court of competent jurisdiction, the remainder of this Final Consent Injunction and Judgment shall remain in full force and effect and shall not be affected by such declaration. If any provision or provisions of this Final Consent Injunction and Judgment is or are declared invalid as being overbroad by a court of competent jurisdiction, the court should modify the provision or provisions so that they are as broad as possible without being so broad as to be invalid.

E.   The Parties acknowledge that they have read this Final Consent Injunction Judgment and that they have discussed its terms and conditions with an attorney of their choice. The Parties further declare and represent that in executing this Final Consent Injunction and Judgment, they have relied wholly upon their own judgment, belief and knowledge of the nature, extent, and effect of this Final Consent Injunction Judgment, without reliance upon any statement, promise or representation by any party.

2404025.09

F.    By his signature below, Defendant waives the right to trial and/or appeal of this matter and agrees to, and acknowledges the terms of, this Final Consent Injunction and Judgment and waives any requirement of the personal service of this Final Consent Injunction and Judgment.

SO ORDERED:

UNITED STATES DISTRICT JUDGE

Dated this __15th__ day of __November__ 2006.

2404025.09

Respectfully submitted,

John Ryan

Date:  8-1-06

State of Michigan            )
                             )
County (and/or City) of Montcalm )

On this 1st day of August, 2006, before me personally appeared John Ryan, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the City and State aforesaid, the day and year first above written.

Notary Public

My Commission Expires:    11-06-2011

DENISE SCHNEIDER
Notary Public, Montcalm County, Michigan
My Commission Expires 11-06-11

2404025.09

HUSCH & EPPENBERGER, LLC

GRAY, RITTER & GRAHAM, P.C.

_/s/ Mullgardt_

Joseph C. Orlet, #4001
S. Christian Mullgardt, II #84373
Matthew R. Grant, #102009
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
(314) 480-1550 Facsimile
joseph.orlet@husch.com
christian.mullgardt@husch.com
matt.grant@husch.com
Attorneys for Plaintiffs

_/s/ Don Downing_

Don M. Downing, #41786
Erica L. Airsman, #521297
701 Market Street, Suite 800
St. Louis, Missouri 63101-1826
(314) 241-5620
(314) 241-4140 Facsimile
ddowning@grgpc.com
earisman@grgpc.com

Attorneys for Defendant

2404025.09

**TECHNOLOGY/STEWARDSHIP AGREEMENT**
(Limited Use License)

## GROWER INFORMATION

Please complete this section with your business information. To sign this Agreement you must be the operator/grower for all fields that will grow plants from Seed you obtain containing Monsanto Technologies defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below. This Monsanto Technology/Stewardship Agreement becomes effective if and when Monsanto issues the Grower's license number from Monsanto's home office in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

Full Grower's Name (Print/Middle/Last)

Business Address (as listed with the IRS)

State    Zip    Area Code    Business Phone

### PROBABLE SEED SUPPLIER

Business Name

Area Code    Phone    City    State    Zip

| Form Number |
| --- |
| 50 0235929 |

THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #:    Batch #:    Date:

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2, Roundup Ready® Corn 2, YieldGard® Corn Borer with Roundup Ready® Corn 2, YieldGard® cotton, Bollgard® cotton, Bollgard® II with Roundup Ready® Cotton, Bollgard® BII cotton, Bollgard® II with Roundup Ready® Cotton, Roundup Ready® Flex Cotton, Bollgard® II with Roundup Ready Flex Cotton, Roundup Ready® supplements, Roundup Ready® Canola, and Roundup Ready® Alfalfa (Monsanto Technologies). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the Monsanto Technologies.

**1. GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**2. BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a Cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq, and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto before and each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto before shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI. ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

GROWER SIGNATURE & DATE REQUIRED

Name    Date    7-31-06

[The Agreement continues below and on the reverse side of this page.]

**4. GROWER AGREES:**
- To direct grain produced from corn containing the YieldGard Rootworm trait and plants that include the Roundup Ready Corn 2 and/or YieldGard Rootworm trait(s) to appropriate markets as necessary.
- If growing Roundup Ready Alfalfa to comply with the Seed and Feed Use Agreement, which is incorporated, and part of this Agreement, to direct any product produced from a Roundup Ready Alfalfa crop or seed, including hay and hay products, only to those countries where regulatory approvals have been granted, and not to plant Roundup Ready alfalfa for the production of sprouts. Refer to the Technology Use Guide for additional information.
- To accept and continue the obligations of the Monsanto Technology Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it for a previous owner or grantee of the land, and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology Stewardship Agreement and they must have to obtain their own Monsanto Technology Stewardship Agreement.
- To implement an Insect Resistance Management program as specified in the applicable Bollgard/Bollgard II cotton and YieldGard corn sections of the most recent Technology Use Guide (TUG) and Insect Resistance Management (IRM) guides and to cooperate and comply with Insect Resistance Management programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop. Not to save any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed company or must sell or use as commodity grain all of the Seed produced pursuant to a Seed production agreement. Grower shall NOT plant any Seed Grower has produced or use or to allow others to use Seed containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data.
- To use on Roundup Ready crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready gene is not depicted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROPS. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROPS. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement. Its specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
- To pay all Technology fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed.
- Upon written request, to allow Monsanto to review the Farm Service Agency crop reporting information on any land farmed by Grower including Summary Acreage History Report, Form 578 and corresponding serial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions.
- To allow Monsanto to examine and copy any records and receipts that could be relevant to Grower's performance of this Agreement.

MONSANTO

MONSANTO COPY

EXHIBIT

A

**5. GROWER RECEIVES FROM MONSANTO COMPANY:**
- A limited use license to purchase and plant seed containing Monsanto Technologies ("Seed") and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement and for saying canola in a separate use agreement.
- Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents owned or licensed by Monsanto, to use Monsanto Technologies subject to the conditions listed in this Agreement. This license does not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.
- Enrollment for participation in Roundup Rewards™ program.
- A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or Canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides or other glyphosate herbicides labeled for use on those crops with autoxidine, clethodim, imazamox, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready crops in Grower's crops for the 2006 growing season. However, neither Grower nor a third party may utilize any type of co-pack or break of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**6. GROWER UNDERSTANDS:**
- Commodity Marketing: Grain/commodities harvested from YieldGard Plus corn, YieldGard Plus with Roundup Ready Corn 2, YieldGard Rootworm with Roundup Ready Corn 2, YieldGard Rootworm with Roundup Ready Corn 2, Roundup Ready Canola, and YieldGard Rootworm corn are approved for U.S. food and feed use but not yet approved in certain export markets where approval is but canola to be received before the end of 2006. As a result, Grower must direct these grain/commodities to the following approved market options feeding on farm, use in domestic feed lots, elevators that agree to accept the grain, or other approved uses in domestic markets only. Go to www.bio.com for a list of Grain Handlers' guidelines on accepting transgenic corn. The American Seed Trade Association web site (www.amseed.org) includes a list of grain handlers' positions on accepting transgenic corn. You must complete and send to Monsanto a Market Choices® Grain Marketing Communication Plan. For additional information on grain market options or to obtain additional forms, call 1-800-768-6387.
- Regulatory approvals Monsanto Technologies may only be used where the products have been approved for use by all required governmental agencies. For example, some Monsanto Technologies are not approved in all states. Check with your Monsanto representative if you have questions about the approval status in your state.
- Insect Resistance Management (IRM): When planting any YieldGard or Bollgard product, Grower must implement an IRM program including planting a non-Bt refuge according to the size and distance guidelines specified in the Bollgard cotton and YieldGard corn sections of the most recent Monsanto Technology Use Guide including any supplemental amendments (collectively "IUG") and the crop specific IRM guides. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
- Crop Stewardship & Specialty Crops Refer to the section on Crossbreeze and Identity Preservation in the IUG for information on crop stewardship and considerations for production of identity preserved crops

**7. GENERAL TERMS:**
Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide (IUG). To obtain additional copies of the IUG, contact Monsanto at 1-800-768-6387 or go to Farmsource.com. Once effective, this agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement. Information regarding new and existing Monsanto Technologies and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**8. MONSANTO'S REMEDIES:**
If Grower breaches this Agreement, in addition to Monsanto's other remedies, Grower's limited-use license will terminate immediately. Thereafter, Monsanto will not accept any application for a new Monsanto Technology/Stewardship Agreement unless Monsanto provides in writing an authorization specifically naming Grower. Any such purported agreement that does not contain Monsanto's express authorization (whether a license number has been issued or not) is void. Injunction, infringement and Contract Damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below, Grower agrees that Monsanto will be entitled to a permanent injunction Grower from making, using, selling, or offering for sale Seed and patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et seq.. Grower will also be liable for all levels of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) their attorneys' fees and costs.

Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed containing Monsanto Technology. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.

**9. NOTICE REQUIREMENT:**
As a condition precedent to Grower or any other person with an interest in Grower's crop commencing any action, or dispute against Monsanto and/or any seller of Seed containing Monsanto Technologies regarding performance or non-performance of Monsanto Technologies or the Seed in which it is contained, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within a sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed in which it is contained. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety.

**10. LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**
Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the IUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**11. GROWER'S EXCLUSIVE LIMITED REMEDY:**
THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

**12. PLEASE MAIL THE SIGNED 2006 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**13. LIMITED STATES PATENTS:**
The licensed U.S. patents include: for YieldGard® Corn Borer corn – 5,484,956; 5,352,605; 5,424,412; 5,858,347; 5,393,874; 6,180,774; 6,331,665; for YieldGard® Corn Rootworm corn - 5,110,732; 6,174,724; 5,484,956; 5,352,605; 5,023,179; 6,063,597; 6,331,665; 6,501,009; for YieldGard®Plus corn - 5,023,179; 5,352,605; 5,484,956; 5,424,412; 5,858,347; 5,593,874; 6,063,597; 6,174,724; 6,331,665; for Roundup Ready® Corn 2 – 4,940,835; 5,188,642; 5,538,142; 5,196,525; 5,322,938; 5,164,316; 5,352,605; 5,554,798; 5,593,874; 5,858,347; 5,424,412; 5,633,435; 5,641,617; 6,825,400; 5,717,084; 5,728,925; 6,083,876; for YieldGard Corn Borer with Roundup Ready® Corn - 5,484,956; 5,352,605; 5,424,412; 5,858,347; 5,593,874; 6,331,665; 4,940,835; 5,188,642; 5,196,525; 5,322,938; 5,164,316; 5,554,798; 5,593,874; 5,633,435; 5,641,617; 6,825,400; 5,717,084; 5,728,925; 6,083,876; 6,022,543; for Roundup Ready® soybeans – 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 5,728,925; 5,804,425; for Roundup Ready® cotton – 5,635,438; 5,352,605; 5,538,184; 5,188,642; 4,940,835; 5,804,425; 6,051,753; 6,018,100; 5,378,619; 6,174,724; 5,159,135; 5,204,863; 5,728,925; 5,717,084; 6,083,876; for Bollgard® with Roundup Ready® cotton - 5,633,435; 5,358,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,018,100; 5,378,619; 6,174,724; 5,159,135; 5,204,863; 6,083,876; 5,880,275 and 5,804,425; for Bollgard® cotton – 4,488,542; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,880,275; 5,159,135; 5,204,863; 5,728,925; 5,717,084; 5,804,544; 5,459,123; 5,362,865; for Bollgard II® with Roundup Ready® cotton - 5,633,435; 6,489,542; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,018,100; 5,378,619; 6,174,724; 5,159,135; 5,204,863; 6,083,876; 5,880,275; 5,804,425; 5,198,544; 5,362,865; 5,459,122; for Roundup Ready® Canola – 6,051,753; 6,018,100; 5,378,619; 5,728,925; 5,774,760; 5,717,084; 5,804,425; 5,633,435; 5,188,642; 4,940,835; 5,463,175; 6,083,876; for Roundup Ready® sugarbeets – 5,378,619; 5,463,175; 5,774,760; 5,633,435; 5,164,316; 5,196,525; 5,322,938; 5,359,142; 5,352,605; 5,530,196; 4,940,835; 5,188,642; 5,717,084; 5,728,925; 6,018,100; 6,051,753; 6,083,876; 5,804,425; 6,174,724; for Roundup Ready® Alfalfa – 6,051,753; 6,018,100; 5,378,619; 5,362,865; 5,669,122; 5,717,084; 5,728,925; 5,633,435; 5,804,425; for Roundup Ready® Flex Cotton – 4,940,835; 5,004,863; 5,159,135; 5,188,642; 5,633,435; 5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,083,876; 6,660,911; for Bollgard II® with Roundup Ready® Flex Cotton - 4,488,542; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,880,275; 5,159,135; 5,204,863; 5,717,084; 5,728,564; 5,669,122; 5,362,865; 4,940,835; 5,004,863; 5,159,135; 5,188,642; 5,633,435; 5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,083,876; 6,660,911; for YieldGard® Plus with Roundup Ready® Corn 2 – 5,023,179; 5,352,605; 5,484,956; 5,424,412; 5,858,347; 5,593,874; 6,063,597; 6,174,724; 6,331,665; 4,940,835; 5,188,642; 5,196,525; 5,322,938; 5,164,316; 5,352,605; 5,554,798; 5,593,874; 5,858,347; 5,424,412; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,083,876; 6,022,543; for YieldGard® Corn Borer with Roundup Ready® Corn 2 – 5,484,956; 5,352,605; 5,354,798; 5,593,874; 5,858,347; 5,424,412; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,083,876; 6,025,543; for tank mix 6,239,072

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup Ready® crops contain genes that confer tolerance to glyphosate, the active ingredient in Roundup® agricultural herbicides. Roundup® agricultural herbicides will kill crops that do not contain Roundup Ready® genes. Roundup®, Roundup Ready®, Bollgard®, Bollgard II®, YieldGard®, and the Vine Symbol are trademarks of Monsanto Technology LLC. Roundup Rewards is a servicemark of Monsanto Technology LLC © 2001 Monsanto Company. Roundup Rewards applies only to Roundup branded and other specified Monsanto agricultural herbicides.

SA-PE-05-1076

**EXHIBIT B-1**

## RECORDS RELEASE AUTHORIZATION

The undersigned hereby instructs and authorizes the Custodian of Records of:

(a)     all agricultural input suppliers, including but not limited to, chemical and seed distributors/retailers, seed cleaners, retail outlets and contractors; and

(b)     all purchasers of commodities, crops and grain;

to provide a full and complete copy of any records maintained by said custodian that pertain in any way to the undersigned, or any entity or enterprise owned, managed or controlled by the undersigned, to Monsanto, or the law firm of Husch & Eppenberger, LLC, or their authorized agents. The undersigned understands and agrees that a photocopy or facsimile copy of this Records Release Authorization can be used to obtain the referenced records, in lieu of the original Records Release Authorization. This authorization will remain effective through December 31, 2010.

_____          7-31-06
John Ryan                                                Date

2404025.09

**EXHIBIT B-2**

## CONSENT TO INSPECT AND RELEASE DOCUMENTS
(Privacy Act Request)

**Requester:** John Ryan

**D/B/A; farm entity:** _John Ryan_

**Requester's Current Addresses:** _5588 C 275 Tol Rd_

_Person City, Mich 48811_

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. § 1001 by a fine of not more than $10,000.00 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. § 552a(i)(3) by a fine of not more than $5,000.00.

I request that the following records for the years 2006 through 2010, inclusive, be released:

1. All FSA records (including FSA 578, 1026A, the USDA Detailed Acreage History Report and aerial maps) and all records from the Risk Management Agency of the USDA relating to the above-named requesters or any entity by or through which they may farm or be shown as an owner or operator by the FSA office;

Pursuant to 5 U.S.C. § 552a(b), I further request, authorize and direct the U.S. Dept. of Agriculture to release any and all information relating to me, including the foregoing records, to the following: (a) Monsanto, or their duly authorized representatives, or (b) Husch & Eppenberger, LLC and/or their representatives.

I am voluntarily signing this consent, without promises being made to me nor under threat of duress or coercion.

NAME: John Ryan

BY/TITLE: _____ Owner
(Signatures of Grower/Requester)

DATE AND TIME: _8-1-06   12:30pm_

WITNESS: _Asanda A. Marshall_